UNITED STATES v. COLORADO MIDLAND RY. CO.

(Circuit Court of Appeals, Eighth Circuit. · December 21, 1912.)

No. 3,810.

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 87*)—SAFETY APPLIANCE ACTS—CONSTRUCTION.

The proviso of section 4 of the act of April 14, 1910 (36 Stat. 299, c. 160 [U. S. Comp. St. Supp. 1911, p. 1328]), which permits the hauling in interstate commerce by a common carrier of a properly equipped car, whose equipment has become defective or insecure, to the nearest available repair point, without liability for the penalty previously imposed for such an act by the safety appliance acts, is inapplicable to offenses committed before its passage and neither that proviso nor the other provisions of the act relating to that subject operate retrospectively.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 138; Dec. Dig. § 87.*

Duty of railroad companies to furnish safe appliances, see ᷭ؈ to Fenton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by the United States against the Colorado Midland Railway Company for violation of the safety appliance act. Judgment for defendant, and the United States brings error. Reversed on certain counts, with instructions to grant new trial.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ralph Hartzell, Asst. U. S. Atty., of Denver, Colo. (Harry E. Kelly, U. S. Atty., of Denver, Colo., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

George A. H. Fraser, of Denver, Colo. (Henry T. Rogers, Daniel B. Ellis, Lewis B. Johnson, and Pierpont Fuller, all of Denver, Colo., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This writ of error questions judgments for the defendant upon two counts of a complaint for violations of the Safety Appliance Acts (Act March 2, 1893, 27 Stat. 531, c. 196, as amended by Act April 1, 1896, 29 Stat. 85, c. 87 [U. S. Comp. St. 1901, p. 3174], and Act March 2, 1903, 32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1911, p. 1314]; and Act April 14, 1910, 36 Stat. 298, c. 160 [U. S. Comp. St. Supp. 1911, p. 1327]), which charged, and upon the trial of which there was substantial evidence tending to prove, that the defendant, on and after the 7th of March, 1910, and before the 1st of April in that year, hauled in interstate commerce two cars which had been properly equipped, but which had become so defective at Arkansas Junction, while they were being used on its line of railroad, that they were not equipped as required by the acts, a distance of 77 miles to Cardiff, the nearest available point where the equipment could be repaired and the place where the defects were discovered.

By section 6 of the act of March 2, 1893 (27 Stat. 532, c. 196), the defendant was liable for a penalty of $100 for so hauling each of these cars. But section 4 of the act of April 14, 1910, re-enacted this declaration of liability, and added others, with the proviso that:

"Where any car shall have been properly equipped as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used on its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by section 4 of this act, or section 6 of the act of March 2, 1893, as amended by the act of April 1, 1896, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point." 36 Stat. 299.

The court below instructed the jury that under this act the defendant had the right to haul the cars, found in a defective condition in the manner testified to and described in these counts, to the first repair point and there repair them, and that such hauling was not a violation of the acts of Congress, unless such repair point was unreasonably distant from the place where the cars were first discovered to be in a defective condition. The United States, the plaintiff below, excepted to this charge and assigned it as error, on the ground that the act of April 14, 1910, was inapplicable to the facts of the case, because it was not enacted until after the offenses charged were committed; and the question presented to this court is: Did the proviso

of section 4 of the act of April 14, 1910, and a compliance therewith, discharge a common carrier from a violation of the Safety Appliance Acts committed before the act of 1910 was passed?

A first reading of the proviso fails to suggest to the mind that Congress intended that it should have any retrospective effect. On the other hand, it produces a strong impression that the question should be answered in the negative. In opposition to this view counsel for the defendant argues: (a) That acts of Congress of a remedial nature should be given a retrospective operation whenever it is necessary to do so in order to give effect to the intention of the Congress; and the soundness of this proposition is admitted. (b) That the proviso is rather a part of the body of the act, an exception and an amendment to the main provision of section 4, and an amendment of the provision of the act of 1893 defining the offense, than a proviso; but it was not enacted by Congress in the form of an exception, or in the form of an amendment to the definition of the offense in the act of 1893, and no good reason occurs why the court should transform it into either in order to interpret it. (c) That the provisions of section 5 of the act of 1910, to the effect that "except as aforesaid," that is, that except that "within the limits specified in the preceding section the movement of a car with defective or insecure equipment may be made without incurring the penalty provided by the statutes," all the provisions, liabilities, and requirements of the earlier safety appliance acts "shall apply to this act," has the same meaning as if they had declared that the provisions, liabilities, and requirements of the earlier acts should not apply where a car with defective or insecure equipment is hauled to the nearest available repair point; but section 5 reads that except that the movement of such a car "may be made without incurring the penalty," and thereby clearly refers to a movement to be made and a penalty liable to be incurred after the passage of the act, and there is neither express nor implied reference in it to a movement made or a penalty incurred before its passage. (d) That Congress intended by the act of 1910 to relieve offenders from liabilities for previous violations of the earlier safety appliance acts in cases like those specified in the proviso of section 4, wherein the penalties had not been reduced to judgment because the act of 1910 contains no express provision saving these penalties; but the act of 1910 was not a repealing, but was a supplemental, act, and no saving clause was requisite to preserve lawful claims based on statutes that were not repealed. And (e) that it clearly appears from all these considerations, and from the purpose and terms of the act, that the Congress intended thereby to discharge all offenders who had complied with the terms of the proviso from all liabilities they had incurred by previous violations of the earlier safety appliance acts.

But a review of these contentions of counsel for the company and a study of the act and all its terms has forced our minds to the opposite conclusion. It is an indisputable canon of construction that, unless the intention of the legislative body that a law should operate retrospectively is clear, it should not be given that effect. There is no provision or term in this act which expresses any intention of the

Congress to release offenders who prior to its passage had found and hauled cars with defective or insecure equipment in the manner described in the proviso of section 4 from the liabilities for penalties which they had admittedly incurred by such acts under the earlier safety appliance acts. On the other hand, the proviso of section 4, and the other provisions of the act of 1910 relating to this subject, use expressions which either customarily or naturally refer to the future. The proviso reads that a car whose proper equipment has become defective or insecure "may be hauled" to the nearest available repair point without liability for the penalties imposed by the earlier safety appliance acts and by that act. The act speaks at the time of its passage. This provision means that after that time, after the passage of the act, a car may be hauled without liability; and under the rule that the expression of one excludes other like times or conditions, this provision excludes the thought that at any previous time a car could have been so hauled without liability for the penalties. There is nothing in the act to indicate that it was the purpose of Congress to release offenders from liabilities already incurred. Its purpose appears to have been to permit common carriers to avoid possible liabilities in the future, and upon a consideration of its purpose, its terms, and its provisions the conclusion is that the proviso of section 4 of the act of April 14, 1910, is inapplicable to violations of the Safety Appliance Acts prior to its passage, and that the act did not release offenders who had hauled cars with defective or insecure equipment in the manner described in the proviso of section 4 from liabilities for penalties incurred by such previous violations of the earlier safety appliance acts.

The judgments upon counts 9 and 11 of the complaint in this action must therefore be reversed, and the case must be remanded to the court below, with instructions to grant a new trial upon those counts.